1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                            DISTRICT OF NEVADA
8                                    * * *
9   ROLLAND P. WEDDELL,                    Case No. 3:13-cv-00123-MMD-WGC
10                            Appellant,
11                 v.                                  ORDER
    ACTING UNITED STATES TRUSTEE
12  AUGUST B. LANDIS,
13                            Appellee.
14

15  I.      SUMMARY

16          Appellant Rolland P. Weddell ("Weddell") challenges the denial of a bankruptcy

17  discharge by the United States Bankruptcy Court for the District of Nevada ("Bankruptcy

18  Court"). Appellee United States Trustee ("the Trustee") brought six denial of discharge

19  claims pursuant to 11 U.S.C. § 727. After a trial, the bankruptcy court denied discharge

20  on four grounds: §§ 727(a)(2), (a)(3), (a)(4), and (a)(5). Weddell argues the Bankruptcy

21  Court erred on all four grounds. For the reasons discussed below, the Bankruptcy's

22  Court's decision is affirmed.

23  II.     BACKGROUND

24          The following facts are taken from the Bankruptcy Court's Findings of Fact and

25  Conclusions of Law ("Findings"). (ECF No. 1-3.) Weddell filed a voluntary chapter 11

26  bankruptcy petition on May 10, 2009. (*Id.* at 8.) Weddell's bankruptcy estate included a

27  claim for $251,561.64 owed to Weddell from the bankruptcy estate of Principle Centered,

28  Inc., as well as firearms which Weddell valued at $60,000. (*Id.*)

While he was in chapter 11, Weddell claimed that around Christmas of 2009 he traded three guns valued at approximately $60,000 for 40 gold coins valued at approximately $40,000 with an unnamed man he met at a sporting goods store. (*Id.* at 9.) Shortly afterward, on January 6, 2010, Weddell used $149,462.50 from the bankruptcy estate bank account to purchase 125 gold coins. (*Id.*) A week later on January 13, 2010, Weddell withdrew an additional $39,000 from the bankruptcy estate account. (*Id.*) That same day, the Bankruptcy Court granted a motion to appoint a trustee and admonished Weddell regarding the use of bankruptcy estate assets. (*Id.*) The next day, on January 14, 2010, Weddell redeposited the $39,000 he had withdrawn back into the bankruptcy estate account. He then withdrew $7,000 in cash and $20,000 in cashier's checks from the same account. Weddell cashed the cashier's checks the same day. (*Id.*)

Between January 14, 2010 and January 17, 2010, Weddell claimed he obtained 20 gold coins from a man named Leonard who he met in a parking lot near a fast food restaurant. (*Id.* at 10.) According to Weddell, Leonard was behind Weddell in the drive-through line of a Del Taco restaurant. Leonard then followed Weddell to a parking space in a "little place right by the freeway," parked next to Weddell, and struck up a conversation about Weddell's license plate. (ECF No. 13-13 at 38.) The conversation eventually led to Leonard offering to sell Weddell tens of thousands of dollars' worth of gold coins. (*Id.*)

Weddell then drove to Las Vegas to meet Leonard in order to purchase 10 more gold coins for $10,000. (ECF No. 1-3 at 9.) When he reached Las Vegas, Weddell claimed a bag with 185 gold coins (worth about $1,000 a coin), about $7,600 in cash, and a semi-automatic pistol were stolen from his vehicle. Weddell called 911 but left before police officers arrived at the scene. He did not respond to calls from the Las Vegas Metropolitan Police ("Metro") or the 911 operator. (*Id.*) The next morning, he gave a statement to the Carson City Sheriff's Office ("the Sheriff's Office") regarding the theft. (*Id.*)

On February 2, 2010, Kelvin Buchanan ("Buchanan") was appointed as the chapter 11 trustee. Weddell and his attorney met Buchanan, but did not disclose the theft that purportedly occurred in Las Vegas. (*Id.*) Weddell communicated several more times with Buchanan over the next few weeks before eventually mailing him a number of unfiled operating reports and a copy of Weddell's statement to the Sheriff's Office. (*Id.*) Buchanan learned about the alleged theft for the first time through Weddell's statement to the Sheriff's Office. (*Id.*)

The Bankruptcy Court granted a motion to convert Weddell's bankruptcy to a chapter 7 case. (*Id.* at 11.) Weddell subsequently testified at a hearing and an exam related to the bankruptcy proceedings. (*Id.*)

On November 30, 2010, the acting U.S. Trustee August B. Landis filed a complaint for denial of discharge. The complaint asserts six claims for denial of discharge based on 11 U.S.C. § 727(a). The Bankruptcy Court conducted a trial on October 16, 2012.  At the trial, the Trustee called four witnesses, including Weddell and three current or former trustees of the bankruptcy estate. A significant portion of Weddell's testimony consisted of him invoking his Fifth Amendment right to remain silent. (*See* ECF No. 13-17.) Weddell called Tyler Jones, a man with whom he had traded guns, as his sole witness. (ECF No. 1-3 at 5.) The parties also stipulated to the entry of 74 documents into evidence. (*Id.*)

The Bankruptcy Court denied Weddell discharge based on §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).[1] Weddell appeals the Bankruptcy Court's decision.

## III.   LEGAL STANDARD

In the Ninth Circuit, the standard of review for an objection to discharge is: "(1) the court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of

---

[1] The Trustee abandoned its § 727(a)(6) claim during trial and the Bankruptcy Court held that the Trustee failed to meet its burden of proof for denial of discharge under § 727(a)(7).

1   the facts to those rules requiring the exercise of judgments about values animating the

2   rules is reviewed de novo." *In re Searles*, 317 B.R. 368, 373 (B.A.P. 9th Cir. 2004), aff'd,

3   212 F. App'x 589 (9th Cir. 2006). "Because discharge is a matter generally left to the

4   sound discretion of the bankruptcy judge, [courts] disturb this determination only if [they]

5   find a gross abuse of discretion." *In re Cox*, 41 F.3d 1294, 1296 (9th Cir.1994) (citation

6   omitted).   Accordingly, district courts "defer to the bankruptcy court's conclusion . . .

7   unless its factual findings are clearly erroneous or it applies the incorrect legal standard."

8   *Id.*

9   **IV.   DISCUSSION**

10          **A.     Allowable inferences from invocation of Fifth Amendment privilege**

11          Weddell's initial argument is that the Bankruptcy Court misapplied the applicable

12  law regarding his invocation of his Fifth Amendment privilege at trial. Weddell, the

13  Bankruptcy Court, and the Trustee all correctly cite the standard laid out in *In re Curtis*,

14  177 B.R. 717, 719-720 (Bankr. S.D. Ala. 1995). "A plaintiff seeking to rely on a Fifth

15  Amendment inference must first offer evidence which at least tends to prove each part of

16  the plaintiff's case." *Id.* at 720. A court may then add to the weight of that evidence by

17  drawing inferences against the party remaining silent, but cannot rely on inferences

18  alone in determining that a moving party has met its burden. *Id.*; *see also S.E.C. v.*

19  *Colello*, 139 F.3d 674, 677-678 (9th Cir. 1998).

20          The Bankruptcy Court correctly identified, both at the trial and in its Findings, that

21  a fact finder may draw adverse inferences against a civil litigant who invokes his or her

22  Fifth Amendment right to remain silent in the face of probative evidence against them.

23  (ECF No. 1-3 at 7; ECF No. 13-18 at 6-7.) The Bankruptcy Court also correctly

24  recognized that the inferences it could draw were limited to the specific questions

25  Weddell refused to answer. (ECF No. 1-3 at 7; ECF No. 13-18 at 80.) As discussed

26  below, the Bankruptcy Court correctly applied this standard in each of the four grounds

27  for denial of discharge.

28  ///

1

**B.      § 727(a)(2)**

"A party seeking denial of discharge under § 727(a)(2) must prove two things: (1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010). The trustee may demonstrate the intent element of § 727(a)(2) by circumstantial evidence or by inferences drawn from the debtor's conduct. *In re Retz*, 606 F.3d at 1199. Further, to meet the requirements of § 727(a)(2), a debtor's intent need not be fraudulent, "because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor." *Id.* at 1200.

The Bankruptcy Court observed during the trial that, besides any inferences drawn from Weddell's assertion of his Fifth Amendment privilege, evidence relevant to its decision would include inaccurate statements and schedules, inconsistencies in Weddell's previous testimony regarding guns and coins, and the absence of any insurance claim on the alleged theft. (ECF No. 13-17 at 20.)

After the trial, the Bankruptcy Court found that the Trustee has met its burden of persuasion in regards to § 727(a)(2). Specifically, the Bankruptcy Court found two distinct instances wherein Weddell disposed property with the intent to hinder, delay, or defraud creditors. The first occurred when Weddell traded $60,000 in firearms for $40,000 in gold, and the second occurred when Weddell used estate property to purchase almost $200,000 in gold coins which later disappeared (along with cash and a hand gun).

In reaching its conclusion, the Bankruptcy Court relied on Weddell's testimony during earlier hearings, the absence of records documenting the sales of the firearms and coins, Weddell's inability to identify either buyer, Weddell's failure to disclose the sales and the theft within a reasonable time period, and documentary evidence regarding the alleged theft. (ECF No. 1-3 at 12-16.) The Bankruptcy Court also drew the following inferences from Weddell's invocation of his Fifth Amendment privilege: 1)

5

1    Weddell did not attempt to identify or locate the man to whom he sold the guns; 2)
2    Weddell did not give or receive a bill of sale in either sale transactions; 3) nobody has
3    ever seen Weddell with the guns he alleges he sold; and 4) Weddell did not assist the
4    police after reporting the alleged theft. (*Id.* at 13, 16.)

5    Weddell argues that the Trustee did not provide any probative evidence that
6    Weddell stole the gold coins, cash, and gun, or that he had the intent to hinder, delay, or
7    defraud creditors. (ECF No. 10 at 22.) Without an evidentiary basis, argues Weddell, the
8    Bankruptcy Court also erred in making negative inferences in support of its ruling. (*Id.*)

9    The Court finds that the Bankruptcy Court appropriately relied on Weddell's own
10   testimony and documentary evidence regarding the alleged theft to support a *prima facie*
11   case that Weddell disposed of property with the intent to defraud creditors. As the
12   Bankruptcy Court clearly explained both at the trial and in its Findings, this *prima facie*
13   case was then strengthened by the negative inferences it drew from Weddell's
14   invocation of his Fifth Amendment privilege at trial.

15   Weddell seems to suggest that because nobody directly testified that he stole the
16   coins, there is no evidence in the Bankruptcy Court record that he attempted to defraud
17   creditors. To the contrary, Weddell's own testimony, specifically its gaps and
18   inconsistencies, provides circumstantial evidence from which a fact finder could
19   determine he met both elements of § 727(a)(2). "Circumstantial evidence . . . 'is proof of
20   one or more facts from which you could find another fact.' . . . [T]he probative value of
21   circumstantial evidence depends entirely upon the strength of the inferences that can be
22   drawn from the proven circumstances." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d
23   1161, 1171 (9th Cir. 2016) (citing Ninth Circuit Model Civil Jury Instructions 1.9 (2015)).
24   It is clear from Weddell's testimony and from documentary evidence that he withdrew
25   large sums from the bankruptcy estate account and some of that money later
26   disappeared. It is also clear that Weddell could not provide the name of the man with
27   whom he traded guns for gold or the full name of the man known as Leonard. Weddell's
28   suspected behavior when he allegedly discovered that around $200,000 of bankruptcy

1    estate assets were stolen is also crystalized through his testimony and documentary

2    evidence. Weddell left the scene of the theft after calling police officers and did not

3    return any of their calls, which is not behavior commensurate with a victim who is

4    interested in obtaining a return of the purportedly stolen property. The Bankruptcy Court

5    drew the reasonable inference from this circumstantial evidence that Weddell had

6    disposed of the assets himself in an attempt to deceive creditors. It then bolstered those

7    inferences with the inferences it drew from Weddell's silence at trial.

8           The Bankruptcy Court identified the correct legal standard, and applied it

9    correctly, and its factual findings are not clearly erroneous. Its decision to deny discharge

10   based on § 727(a)(2) is therefore affirmed.

11   **C.    § 727(a)(3)**

12          Section 727(a)(3) "places an affirmative duty on the debtor to create books and

13   records accurately documenting his business affairs." *In re Caneva*, 550 F.3d 755, 762

14   (9th Cir. 2008). "[T]he debtor must present sufficient written evidence which will enable

15   his creditors reasonably to ascertain his present financial condition and to follow his

16   business transactions for a reasonable period in the past." *Id.* at 761 (quotations

17   omitted). The Trustee bears the burden of proving by a preponderance of the evidence

18   that: 1) "the debtor failed to maintain and preserve adequate records, and 2) that such

19   failure makes it not possible to determine the debtor's financial condition and material

20   business transactions." *Id.* at 761. "After showing inadequate or nonexistent records, the

21   burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the

22   records." *Id.*   The intent to conceal financial information is not a prerequisite to finding

23   that records are inadequate, nor is a lack of records justified by an honest belief that

24   records do not need to be kept. *In re Cox*, 41 F.3d 1294, 1297 (9th Cir. 1994). There is

25   no requirement to prove that a debtor's failure to maintain records be "knowing" or

26   "fraudulent." *In re Knowling*, 2011 WL 5024298 (Bankr. D. Or. 2011). In order to justify

27   the fact that records were not kept, Weddell needed to establish that others in like

28   circumstances would not keep them. *Id.* at 763.

1    The Bankruptcy Court found that the Trustee proved Weddell failed to maintain
2 and preserve adequate records without resorting to any negative inferences from
3 Weddell's Fifth Amendment invocation. The Bankruptcy Court specifically referenced the
4 lack of records evidencing any gun for gold trades or any cash for gold trades with the
5 man known as Leonard. The absence of records relating to these liquid assets, the
6 Bankruptcy Court determined, made it impossible to determine Weddell's financial
7 condition and material business transactions.

8    Weddell argues that "substantial records" documenting the purchase and theft of
9 gold coins were entered into the record at trial. (ECF No. 10 at 20.) Weddell does not
10 cite any of these records specifically, but he is likely referring to bank records indicating
11 that he withdrew money from the bankruptcy estate account and police records
12 documenting his contact with Metro and the Sheriff's Office. However, as the Bankruptcy
13 Court clearly pointed out, there are no contracts or receipts documenting the purchase of
14 gold coins from the unnamed man or Leonard. As is evident from references to an
15 "unnamed man" and "a man known only as Leonard" in both this opinion and the
16 Bankruptcy Court's Findings, any record of these exchanges, which involved tens of
17 thousands of dollars, is woefully incomplete if for no other reason than the buyers and
18 sellers were not identified.

19    The Trustee established that Weddell failed to keep records; and Weddell did not
20 show that his failure to maintain records was justified. Therefore, the Bankruptcy Court
21 did not err in denying discharge under § 727(a)(3) and its ruling is affirmed.

22    **D.    § 727(a)(4)**

23    In order to deny discharge under §727(a)(4), the Trustee must show, by a
24 preponderance of the evidence, that: "(1) the debtor made a false oath in connection
25 with the case; (2) the oath related to a material fact; (3) the oath was made knowingly;
26 and (4) the oath was made fraudulently.*" In re Retz*, 606 F.3d at 1197. "A finding of
27 fraudulent intent is a finding of fact reviewed for clear error." *Id.*
28 ///

The Bankruptcy Court found that the Trustee satisfied its burden relating to the alleged theft of approximately $200,000 of cash, gold, and a weapon in Las Vegas. The Bankruptcy Court called Weddell's story "incredible" and found that Weddell's account of his behavior immediately after the theft unbelievable. (ECF No. 1-3 at 20.) Therefore, the Bankruptcy Court reasoned, the Trustee demonstrated that Weddell had knowingly and fraudulently made a false oath related to assets of the bankruptcy estate. (*Id.*)

Weddell argues, once again, that the Bankruptcy Court erred because there is no direct evidence that he fabricated the story about the Las Vegas theft. (ECF No. 10 at 21.) Once again, however, this Court finds that the Bankruptcy Court appropriately relied on circumstantial evidence while acting as a fact finder. The Bankruptcy Court's finding of fraudulent intent is not clearly erroneous and its conclusion that Weddell made a material false oath in violation of § 727(a)(4) to support denial of discharge is affirmed.

**E.    § 727(a)(5)**

"[U]nder Section 727(a)(5) after a creditor makes a *prima facie* showing that an asset existed, but that neither it nor its proceeds can be located, the burden shifts to the debtor to provide a satisfactory explanation for the missing asset." *In re Retz*, 606 F.3d at 1205. "Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court, overturned only for clear error." *Id.*

The Bankruptcy Court found Weddell's explanation for missing $200,000 worth of bankruptcy estate assets unsatisfactory. (ECF No. 1-3) Accordingly, it found that the Trustee met its burden under § 727(a)(5). Weddell reiterates the same arguments to oppose denial of discharge under § 727(a)(5) as under § 727(a)(4) and (a)(2) *infra*.  His arguments are unpersuasive for the same reasons articulated above. The Bankruptcy Court based its conclusion on probative evidence in the record as well as appropriate inferences from Weddell's silence at trial. The Bankruptcy Court's finding that Weddell failed to satisfactorily explain the disappearance of bankruptcy estate assets is not clearly erroneous and its decision to deny discharge under § 727(a)(5) is affirmed.

///

1    **V.    CONCLUSION**

2           It is hereby ordered that the Bankruptcy Court's decision to deny discharge is

3    affirmed.

4           The Clerk is directed to serve a copy of this Order on the Bankruptcy Court within

5    seven (7) days and such service constitutes this Court's mandate. The Clerk of the Court

6    is further instructed to close this case.

7           DATED THIS 4th day of May 2016.

8

9

10                                         _____
                                           MIRANDA M. DU
11                                         UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28